UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

NORMAN GRETHEN,              )
                             )
    Plaintiff,              )
                             )
v.                           )   Case No. 4:20-cv-357-GMB
                             )
ANDREW SAUL,                 )
Commissioner of Social Security,  )
                             )
    Defendant.              )

## **MEMORANDUM OPINION**

On December 16, 2016, Plaintiff Norman Grethen filed an application for a period of disability and disability insurance benefits. His alleged disability onset date is February 5, 2012. Grethen's application for benefits was denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on September 17, 2018 and denied Grethen's claims on January 24, 2019. Grethen requested a review of the ALJ's decision by the Appeals Council, which declined review on January 16, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of January 16, 2020.

Grethen's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a

United States Magistrate Judge. Doc. 15. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not

---

[1] In general, the legal standards are the same whether a claimant seeks disability insurance benefits ("DIB") or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

    (1) Is the claimant presently unable to engage in substantial gainful activity?
    (2) Are the claimant's impairments severe?
    (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
    (4) Is the claimant unable to perform her former occupation?
    (5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

Applying the sequential evaluation process, the ALJ found Grethen had not engaged in substantial gainful activity since his alleged onset date of February 5, 2012 through his date last insured of December 31, 2012. R. 27. At step two, the ALJ found Grethen suffered from the severe impairments of degenerative disc disease and obesity. R. 28.

At step three, the ALJ found Grethen did not have an impairment or combination of impairments meeting or medically equaling the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 32. Before proceeding to step four, the ALJ determined Grethen had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1527(b) with the additional limitations of "occasional stooping; occasional crouching; occasional upper extremity pushing or pulling; no lower extremity pushing or pulling; and no

driving." R. 33. In reaching this opinion, the ALJ stated that he considered Grethen's symptoms, the objective medical evidence, and other evidence. R. 33.

The ALJ determined that Grethen was not able to perform any past relevant work. R. 39. The ALJ relied on the evidence of a Vocational Expert ("VE") to find that "[t]hrough the date last insured, considering [Grethen's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." R. 42–45. Thus, at step five of the five-step sequential process, the ALJ found Grethen not to be disabled from February 5, 2012, the alleged onset date, through December 31, 2012, the date last insured. R. 45.

### III.  RELEVANT FACTUAL BACKGROUND

Grethen was 51 years old at the time of the hearing and 44 years old at the alleged onset of his period of disability. R. 65. Grethen has a tenth-grade education. R. 59. From 2005 to 2007, Grethen had surgeries on both shoulders. R. 64. In 2008, he worked as a shipping and receiving clerk loading and unloading trucks. R. 58. He testified that he experienced constant back and shoulder pain during that time. R. 58. Since Grethen quit that job in 2008, he has not worked for pay. R. 65.

On February 5, 2012, Grethen went to the emergency room for his back pain. R. 58–59, 508. During the hearing he could not point to a specific cause of his back other than the cumulative effect of years of heavy lifting and previous car wrecks

and motorcycle accidents. R. 59. However, his medical records indicate that the pain was caused by "shoveling shingles." R. 509. They also indicate that he had normal findings during his initial assessment and physical exam except for his back pain. R. 509, 512. He was discharged to his home the same day with a pain level at three on a scale of one to ten, with an improved, stable condition and the ability to walk without crutches. R. 510.

On April 4, 2012, Grethen was treated in the emergency room for pain in his right buttock that began that day, and he was discharged to his home the same day. R. 503–07. His initial assessment was normal except for notations of obesity and pain in his right buttock. R. 503. Grethen's physical exam also produced normal findings except for pain in his right buttock. R. 506. He had a shuffling gate but was not otherwise distressed. R. 504.

On July 23, 2012, Grethen was treated in the emergency room for UTI symptoms. R. 500. His physical exam returned no abnormal findings. R. 499. He was discharged in stable condition. R. 499. On July 26, 2012, Grethen was treated in the emergency room for cellulitis from an insect bite. R. 491–95. On October 15, 2012, Grethen was treated in the emergency room for sharp abdominal pain. R. 485. His initial assessment resulted in no abnormal findings except tachycardia. R. 485. He was discharged on the same day. R. 487. The treating physician noted that he was in mild to moderate distress from vomiting but otherwise reported no abnormal

findings on his physical exam. R. 489.

He was admitted to the emergency room on January 13, 2013 for left foot strain from an injury that occurred on Christmas Eve. R. 478–79. His initial assessment and physical exam revealed no abnormal findings except swelling in his foot, and the radiologist concluded that there was no evidence of a fracture or dislocation or any acute abnormality. R. 479–84. He was discharged the same day. R. 480. Since 2012, Grethen has been taking sleeping pills along with his pain medication, which has caused headaches, lethargy, and constipation. R. 61–62. Grethen testified that his medication relieves 75% of his pain. R. 66.

In August 2017, Vivian Hannon, a nurse practitioner, completed a "Physical Capacities Form" for Grethen reflecting that he could stand for no more than 30 minutes at a time; that he should spend the entirety of an eight-hour workday lying down, sleeping, or sitting with his legs propped up; and that she would expect him to be off-task 30% to 40% of the workday in addition to normal workday breaks. R. 914. She also indicated that these limitations date back to February 2012 but have worsened since that time. R. 914. In August 2018, Dr. Randall Stewart completed the same form in a nearly identical manner. R. 996. Grethen testified that Dr. Stewart had been treating him for a year and a half prior to the hearing but that Hannon had been treating him for much longer. R. 65.

## IV.  DISCUSSION

Grethen makes two arguments for reversing the ALJ's decision: (1) the ALJ failed to afford proper weight to the opinions of Dr. Stewart and Hannon; and (2) the ALJ's history of substituting his opinion for the opinion of medical experts adversely affected his decision. Doc. 16 at 2.  The court addresses each of these arguments in turn.

**A.     Dr. Stewart and Hannon**

Grethen argues that the ALJ gave too little weight to the medical opinions of Dr. Stewart and Hannon. Doc. 16 at 18–24.  Both Dr. Stewart and Hannon expressed their opinions that Grethen's disc degeneration caused him to be unable to stand for more than 30 minutes at a time and to need to lie down, sleep, or sit with his legs propped up for the entirety of an eight-hour workday. R. 914 & 996.  Grethen argues that their opinions are well supported by his medical records. Doc. 16 at 19.  In response, the Commissioner argues that substantial evidence supports the ALJ's decision to discount these opinions. Doc. 17 at 5.  For his part, the ALJ concluded that Dr. Stewart and Hannon's opinions "are inconsistent with the weight of the evidence that indicates not much more than routine follow-ups and infrequent symptomatic treatment during 2012, with no workplace restrictions and generally no more than mild back pain secondary to degenerative disc disease." R. 38.

The medical opinion of a treating medical provider is given controlling weight

if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The court finds that there is substantial evidence supporting the ALJ's decision to discount the opinions of Dr. Stewart and Hannon. Grethen claims that his period of disability began when he was treated for back pain on February 5, 2012. Yet, he walked unassisted out of the emergency room on the same day while reporting his pain as three out of ten. R. 510. Grethen was treated one month later for pain in his right buttock but was discharged again on the same day. R. 503–07. Grethen visited the emergency room twice more in July 2012, once in October 2012, and once more in January 2013, but never for back pain or any condition related to his degenerative disc disease. R. 478–500. Thus, the records indicate that Grethen was treated only twice for back pain during his alleged period of disability and both treatments were successful. R. 503–07, 510. There are no medical records from 2012 other than visits to the emergency room for acute distress. The court therefore finds that substantial evidence supports the ALJ's assessment that Dr. Stewart's and Hannon's opinions that Grethen has been suffering debilitating symptoms since 2012 due to his degenerative disc disease are inconsistent with the medical evidence.

**B.     Bias**

Grethen also argues that the ALJ has "a history of substituting his opinion for

the opinion of medical experts" that "adversely affected his decision." Doc. 16 at 25 & 30. Grethen cites to several cases in which this ALJ's decisions have been reversed. Doc. 16 at 25–30. However, there is a presumption that ALJs are not biased. *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018). And "an ALJ's number of reversals in district court . . . are general assumptions that cannot survive the presumption of non-bias." *Id.* Grethen may cast aspersions at this ALJ, but he has not come forward with any evidence that the ALJ was biased in this case, and the court is satisfied that the ALJ has developed a full and fair record, has carefully weighed the evidence, and has given individualized consideration to each claim. *See id.* (citing *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996)).

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due be affirmed. A final judgment will be entered separately.

DONE and ORDERED on May 18, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE